IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| THE WACKENHUT CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>SEIU LOCAL 1,<br>            Defendant. | FILED<br>APRIL 10, 2008    YM<br>08CV2053<br>Case No. JUDGE KENDALL<br>MAGISTRATE JUDGE SCHENKIER<br><br>Judge _____ |

## COMPLAINT

Plaintiff The Wackenhut Corporation ("Wackenhut") for its Complaint against Defendant SEIU Local 1 ("Local 1") alleges as follows:

## INTRODUCTION

1.   Wackenhut brings this action against Defendant Local 1 under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, for the injuries that Wackenhut has sustained because of Defendant's violations, as hereinafter alleged, of the antitrust laws, particularly Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

2.   This action is also brought pursuant to Section 303 of the National Labor Relations Act ("NLRA, as amended"), 29 U.S.C. § 187, to secure damages for violations of Section 8(e), 29 U.S.C. § 158(e) and Section 8(b)(4), 29 U.S.C. § 158(b)(4).

3.   Local 1 violated Section 1 of the Sherman Act when it entered into and maintained an illegal "hot cargo" agreement with the Building Owners and Managers Association of Chicago ("BOMA/Chicago") from April 26, 2004 through April 29, 2007 to exclude security services companies that did not have a collective bargaining agreement with Local 1 ("non-signatories") from the Downtown Chicago office building market. This "hot cargo" agreement

– as it is referred to in the labor laws[1] – barred BOMA/Chicago members from subcontracting security services to non-signatories. If a BOMA/Chicago member wanted to subcontract security services to non-signatories, the "hot cargo" agreement required the non-signatory security company to pay its security guards the same or equivalent wages and benefits as set forth in Local 1's security services agreement with BOMA/Chicago and contribute to Local 1's pension fund regardless of whether its employees would be eligible to draw from that fund. The plain language, intent and effect of the "hot cargo" agreement was to exclude from the Downtown Chicago office building market any security services provider that did not have a collective bargaining agreement with Local 1, to eliminate competition among security services providers and to cause building owners and managers to pay more for security services than they would have paid but for the "hot cargo" agreement.

4. Local 1 also violated Section 2 of the Sherman Act because the "hot cargo" agreement described above had the additional effect of creating a monopoly for SEIU security guards in the Downtown Chicago office building market. In addition, Local 1, by virtue of its "hot cargo" agreement with BOMA/Chicago, violated Section 2 by conspiring to monopolize the provision of security services in the Downtown Chicago office building market.

5. Local 1 also violated Sections 303 and 8(b)(4) of the NLRA, as amended, 29 U.S.C. § 187, 158(b)(4), by engaging in a prohibited Section 8(e) "hot cargo" agreement, inducing employers to enter into such unlawful agreement and restraining employers through the use of such agreement.

---

[1] Plaintiff uses the term "'hot cargo' agreement" throughout to refer to Article 23 of the Agreement between Local 1 and BOMA/Chicago for the period April 26, 2004, to April 27, 2007. The term "'hot cargo' agreement" or clause is used in the U.S. labor laws to refer to any provision that, by its language or effect, excludes products or services provided by any company that does not have an agreement with a union. In the present case, Article 23, which Plaintiff describes as a "'hot cargo' agreement," is also referred to as an "all standards provision" and a "union signatory clause."

2

## JURISDICTION AND VENUE

6. Plaintiff brings this action to recover damages, including treble damages, reasonable attorneys' fees, and costs of suit, arising out of Defendant's violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 303, 8(b)(4), and 8(e) of the NLRA, as amended, 29 U.S.C. §§ 187, 158(b)(4), 158(e).

7. This Court has jurisdiction of this case pursuant to Sections 1331 and 1337 of the United States Judicial Code, 28 U.S.C. §§ 1331 (federal question), 1337 (commerce and antitrust regulation), and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15(a) and 26. This Court also has jurisdiction pursuant to Section 303(b) of the NLRA, as amended, 29 U.S.C. § 187(b).

8. Venue is proper in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and Section 1391 of the United States Judicial Code, 28 U.S.C. § 1391(b), (c) and (d), because Defendant's unlawful conduct complained of herein was committed in Chicago, Illinois, and the Defendant resides within this district. Venue is also proper in this district pursuant to Section 303(b) of the NLRA, as amended, 29 U.S.C. § 187(b).

9. This Court has in personam jurisdiction over the Defendant because it was engaged in an illegal agreement in restraint of trade that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout this district.

## THE PARTIES

10. Plaintiff Wackenhut is, and at all times relevant to this complaint has been, a Florida corporation with its headquarters at 4200 Wackenhut Drive, Palm Beach Gardens, Florida 33410. Wackenhut is a leading provider of security services to government agencies and to a wide range of industrial and commercial customers throughout the United States, including in the Chicago area. Wackenhut employs approximately 32,000 security officers in the United

States. Compared to security industry averages, Wackenhut's security officers are paid higher wages, have better benefits, have lower turnover rates, and receive more training. In the course of its business, Wackenhut is involved in a continuous stream of trade and commerce between the several states of the United States, resulting from Wackenhut's provision of guard and other security services in Illinois and other states. Wackenhut's continuing operations directly affect trade and commerce among the several states.

11.     Defendant Local 1 is, and at all times relevant to this complaint has been, a Local of the Service Employees International Union ("SEIU"). Local 1 is an unincorporated association duly authorized, constituted and existing under the laws of the United States and one or more of the states thereof, with offices, as well as its principal place of business, located at 111 E. Wacker Drive, Suite 2500, Chicago, Illinois 60601. Defendant Local 1 is organized and operated for the purpose of carrying on collective bargaining and labor relations with numerous employees engaged in intra-state and interstate commerce. In the conduct of its business, Local 1 has a substantial impact on interstate commerce.

12.     SEIU is, and at all times relevant to this complaint has been, an international labor union with its headquarters at 1800 Massachusetts Avenue, NW, Washington, D.C., and has members across the country, including in this district. According to its website, SEIU is the fastest growing union with approximately 1.9 million members throughout North America, including 900,000 health care workers, 850,000 employees in public services, 200,000 members working in property services including janitors and door men and women, and approximately 25,000 private sector security guards.

13.     BOMA/Chicago is one of the 100 U.S. members of the Building Owners Management Association International ("BOMA"). BOMA/Chicago has its headquarters at 120 S. LaSalle Street, Suite 1400, Chicago, IL 60603-3401. According to its website, BOMA/Chicago

represents 270 buildings housing private, institutional and government/public uses in the City of Chicago and 150 companies that provide services to commercial office buildings. According to its website, BOMA/Chicago members make up 81 percent of downtown's office buildings and nearly 90 percent of office space in its Class A buildings. Neither BOMA/Chicago nor its members are employers of security guards.

## TRADE AND COMMERCE

14. The activities of Defendant and its co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

15. Defendant and its co-conspirators have used instrumentalities of interstate commerce to effectuate the unlawful conduct alleged herein.

## LABOR UNIONS AND THE SECURITY SERVICES INDUSTRY

16. The NLRA, as amended, 29 U.S.C. §§ 151 et. seq., bars SEIU and its Locals from becoming the certified representative of Wackenhut's security guards. Section 9(b)(3) of the NLRA, as amended, expressly prohibits the National Labor Relations Board ("NLRB") from (1) deciding the unit appropriate for collective bargaining if it includes, together with other employees, any individual employed as a guard, and (2) certifying any labor union as the representative of security guard employees if such labor organization also admits to membership employees other than guards or is affiliated with any organization which has non-guard members. 29 U.S.C. § 159(b)(3). A "guard" or "guard only" unit represented by a "guard" or "guard only" union is statutorily preferred to protect the employer's property and the safety of persons on the employer's premises. Section 9(b)(3) effectively ensures both Wackenhut and its customers that Wackenhut security guards will not be conflicted in performing their duties by loyalties to fellow union members who work on the same site.

17. SEIU is a "mixed" union because it admits janitors, hospital workers, and other service workers to membership, in addition to security guards. As a result, SEIU cannot be certified by the NLRB as a representative of Wackenhut's security guards for collective bargaining. The only way SEIU may gain recognition of Wackenhut's security guards is with Wackenhut's agreement. Wackenhut has the legal right to reject SEIU's demands that Wackenhut recognize SEIU.

18. Except for three situations in which Wackenhut obtained contracts at sites where mixed unions were already in place, Wackenhut recognizes and negotiates collective bargaining agreements with, and only with, "guard only" unions that are certified by the NLRB in appropriate units following NLRB-conducted secret ballot elections where a majority of votes cast are in favor of union representation pursuant to Section 9(b)(3) of the NLRA, as amended. Wackenhut believes, as does Congress, that security is compromised when guards are members of a "mixed" union.

19. Wackenhut is a party to dozens of collective bargaining agreements with guard-only unions. Wackenhut has more security guards represented by labor unions – both in total numbers and as a percentage of its work force – than any other large security company in the United States.

## LOCAL 1'S VIOLATIONS OF LAW

20. From April 26, 2004, through April 29, 2007, and also prior to that period, through the "hot cargo" agreement with BOMA/Chicago, Local 1 restrained, suppressed and eliminated competition in the market for security services in Downtown Chicago. Through the "hot cargo" agreement, Local 1 required building owners and managers in the Chicago market to subcontract security services only to companies that were signatories to a collective bargaining

6

agreement with Local 1. Article 23 of the Security Services Agreement between Local 1 and BOMA/Chicago contains the "hot cargo" clause and reads in relevant part:

> With respect to any subcontractor that does not have a collective bargaining agreement with the Union, the Employer shall require that said contractor will meet all of the standards of this Agreement.

21. Local 1 has used the "hot cargo" agreement against security services providers that failed to comply with all the standards contained in its Security Services Agreement with BOMA/Chicago. In at least one such instance, Local 1 and BOMA/Chicago terminated the security services provider.

22. Local 1 also used the "hot cargo" agreement to force BOMA/Chicago members to refuse to do business with Wackenhut or, if they ever allowed Wackenhut to bid on a security services contract, to force Wackenhut to charge the same rates – those contained in Local 1's Agreement with BOMA/Chicago – as all other security services providers in Chicago. The "hot cargo" agreement also required Wackenhut to contribute to Local 1's pension fund regardless of whether its employees would be eligible to draw from that fund. The effect of the "hot cargo" agreement was to restrict and prevent Wackenhut from competing openly and fairly, based on its own rates, for a contract for security services.

23. On October 4, 2006, Wackenhut filed an unfair labor practice charge with Region 13 of the National Labor Relations Board ("NLRB") that alleged that the "hot cargo" agreement between Defendant Local 1 and BOMA/Chicago violated Section 8(e) of the NLRA, as amended, 28 U.S.C. §158(e).

24. Section 8(e) renders unlawful any agreement that requires an employer to use only subcontractors that sign union contracts – a so-called "hot cargo" agreement.

25.     On March 19, 2007, the General Counsel of the NLRB directed that a Complaint issue against Local 1 and BOMA/Chicago for violation of § 8(e) based on Article 23 of their Agreement.

26.     The case was heard before an NLRB Administrative Law Judge on June 11 and 12, 2007. A decision and Recommended Order issued on December 21, 2007, finding that the "hot cargo" agreement (referred to as the "all standards clause" in the decision) contained in Article 23 of the Local 1-BOMA/Chicago Agreement had violated Section 8(e) of the NLRA.

27.     Thus, the decision found and held in pertinent part:

By entering into, maintaining and giving effect to a provision in the 2004 BOMA/Chicago-SEIU, Local 1, specifically Article XXIII…[citing Art. 23 language quoted in ¶ 23] and applying such provision to require subcontractors to observe and be bound by the agreement's requirements for payments into fringe benefit funds and by otherwise in effect requiring security subcontractors as a condition of their contract to become signatories to an agreement with SEIU Local 1, BOMA has violated Section 8(e) of the Act.

28.     With no exceptions taken to the December 21, 2007 ALJ Decision, the NLRB adopted the ALJ's findings and conclusions and Recommended Order on February 5, 2008.

29.     The effect of Article 23 and the conduct described herein has been to exclude from the Downtown Chicago office building market any security services provider that did not have a collective bargaining agreement with Local 1, to eliminate competition among security services providers and to cause building owners and managers to pay more for security guard services than they would have paid but for the "hot cargo" agreement.

30.     Local 1's conduct and activity described herein also violated Sections 8(e) and 8(b)(4) of the NLRA, as amended, 29 U.S.C. §§ 158(e), 158(b)(4), and is, therefore, not protected labor activity.

## THE RELEVANT MARKET AND CUSTOMERS

31.     The relevant product market is the provision of security services in office buildings.

32. The relevant geographic market is Downtown Chicago.

33. The relevant customers affected by Local 1's anticompetitive conduct are building owners and managers in the Downtown Chicago area market who purchase security guard services.

## LOCAL 1'S ANTI-COMPETITIVE CONDUCT

34. By including and agreeing to Article 23 in the Agreement between Local 1 and BOMA/Chicago and enforcing Article 23, Local 1 entered into an illegal agreement in restraint of trade – aimed at creating a monopoly in the relevant market – and caused injury to competition in the relevant market, customers in that market, and Wackenhut.

## CLAIMS FOR RELIEF

### COUNT I – Agreement in Restraint of Trade in Violation of Sherman Act, Section 1

35. Plaintiff Wackenhut realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 34 of the complaint as though fully set forth herein.

36. The provision of security services in office buildings is the relevant product market.

37. The relevant geographic market is Downtown Chicago.

38. Local 1 has entered into and carried out an agreement in restraint of trade (a) to unlawfully exclude from the relevant market all non SEIU-affiliated security services companies, including – at times – Wackenhut, (b) to maintain and enhance its monopoly in the relevant market and to stifle competition, and (c) to eliminate consumer choice through unlawfully exclusionary behavior designed to prevent Wackenhut from competing openly and fairly in the relevant market.

39. There is no legitimate justification for Local 1's conduct and Article 23 in its Agreement with BOMA/Chicago described herein given that Article 23 violates Sections 8(e) and 8(b)(4) of the NLRA, as amended, 29 U.S.C. §§ 158(e), 158(b)(4).

40. Wackenhut has suffered injury to its business and property as a result of Local 1's conduct, including without limitation the "hot cargo" agreement contained in Article 23 of its Agreement with BOMA/Chicago. Wackenhut was denied the opportunity to bid on contracts and lost bids as a result of the "hot cargo" agreement, which required all security companies that wanted to do business with BOMA/Chicago members to be affiliated with Local 1, to agree to minimum wages and benefits mandated by the SEIU, and to contribute to Local 1's pension fund. Finally, Local 1's illegal "hot cargo" agreement not only denied Wackenhut the ability to compete openly and freely, causing Wackenhut to lose business, but also – and more importantly – caused harm to consumers, who paid more for security services or paid the same price for inferior security services than they would have absent Local 1's illegal "hot cargo" agreement.

41. Local 1's conduct caused injury to the relevant market in the form of higher prices charged to customers and reduced competition and consumer choice.

### COUNT II – Monopolization in Violation of Sherman Act, Section 2

42. Plaintiff Wackenhut realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of the complaint as though fully set forth herein.

43. The provision of security services in office buildings is the relevant product market.

44. The relevant geographic market is Downtown Chicago.

45.     Local 1 possesses monopoly power in the relevant market through its agreement with its co-conspirator BOMA/Chicago, which represents nearly 90 percent of the Class A office buildings and more than 80 percent of all office buildings in Downtown Chicago.

46.     The "hot cargo" agreement between Local 1 and BOMA/Chicago and their enforcement of it creates a substantial barrier to entry and expansion in the relevant market.

47.     Local 1 has the power to control prices and exclude competition in the relevant market.

48.     Local 1 has entered into and carried out an agreement in restraint of trade (a) to unlawfully exclude from the relevant market all non SEIU-affiliated security services companies, including Wackenhut, (b) to maintain and enhance its monopoly in the relevant market and to stifle competition, and (c) to eliminate consumer choice through unlawfully exclusionary behavior designed to prevent Wackenhut from competing openly and fairly in the relevant market.  Local 1 has conducted itself in this way with the intent to maintain its monopoly in the relevant market.

49.     There is no legitimate justification for Local 1's conduct and Article 23 in its Agreement with BOMA/Chicago described herein given that Article 23 violates Sections 8(e) and 8(b)(4) of the NLRA, as amended, 29 U.S.C. §§ 158(e), 158(b)(4).

50.     Wackenhut has suffered injury to its business and property as a result of Local 1's conduct, including without limitation the "hot cargo" agreement contained in Article 23 of its Agreement with BOMA/Chicago.  Wackenhut was denied the opportunity to bid on contracts and lost bids as a result of the "hot cargo" agreement, which required all security companies that wanted to do business with BOMA/Chicago members to be affiliated with Local 1, to agree to minimum wages and benefits mandated by the SEIU, and to contribute to Local 1's pension fund.  Finally, Local 1's illegal "hot cargo" agreement not only denied Wackenhut the ability to

compete openly and freely, causing Wackenhut to lose business, but also – and more importantly – caused harm to consumers, who paid more for security services or paid the same price for inferior security services than they would have absent Local 1's illegal "hot cargo" agreement.

51. Local 1's conduct caused injury to the relevant market in the form of higher prices charged to customers and reduced competition and consumer choice.

### Count III – Conspiracy to Monopolize

52. Plaintiff Wackenhut realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 50 of the complaint as though fully set forth herein.

53. The provision of security services in office buildings is the relevant product market.

54. The relevant geographic market is Downtown Chicago.

55. Local 1 has conspired to monopolize the relevant market through its agreement with its co-conspirator BOMA/Chicago, which represents nearly 90% of the Class A office buildings and more than 80% of all office buildings in Downtown Chicago.

56. The "hot cargo" agreement between Local 1 and BOMA/Chicago and their enforcement of it creates a substantial barrier to entry and expansion in the relevant market.

57. Local 1 has the power to control prices and exclude competition in the relevant market.

58. Local 1 has entered into and carried out an agreement in restraint of trade (a) to unlawfully exclude from the relevant market all non SEIU-affiliated security services companies, including Wackenhut, (b) to maintain and enhance its monopoly in the relevant market and to stifle competition, and (c) to eliminate consumer choice through unlawfully exclusionary behavior designed to prevent Wackenhut from competing openly and fairly in the

relevant market. Local 1 has conducted itself in this way with the intent to conspire to monopolize the relevant market.

59. There is no legitimate justification for Local 1's conduct and Article 23 in its Agreement with BOMA/Chicago described herein given that Article 23 violates Sections 8(e) and 8(b)(4) of the NLRA, as amended, 29 U.S.C. §§ 158(e), 158(b)(4).

60. Wackenhut has suffered injury to its business and property as a result of Local 1's conduct, including without limitation the "hot cargo" agreement contained in Article 23 of its Agreement with BOMA/Chicago. Wackenhut was denied the opportunity to bid on contracts and lost bids as a result of the "hot cargo" agreement, which required all security companies that wanted to do business with BOMA/Chicago members to be affiliated with Local 1, to agree to minimum wages and benefits mandated by the SEIU, and to contribute to Local 1's pension fund. Finally, Local 1's illegal "hot cargo" agreement not only denied Wackenhut the ability to compete openly and freely, causing Wackenhut to lose business, but also – and more importantly – caused harm to consumers, who paid more for security services or paid the same price for inferior security services than they would have absent Local 1's illegal "hot cargo" agreement.

61. Local 1's conduct caused injury to the relevant market in the form of higher prices charged to customers and reduced competition and consumer choice.

**Count IV – Violation of Section 8(e) of the National Labor Relations Act, as Amended**

62. Plaintiff Wackenhut realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 60 of the complaint as though fully set forth herein.

63. From April 26, 2004, through April 29, 2007, and also prior to that period, through the "hot cargo" agreement in its Agreement with BOMA/Chicago, Local 1 restrained,

13

suppressed and eliminated competition in the market for security services in Downtown Chicago. Through the "hot cargo" agreement, Local 1 forced building owners and managers in the Chicago market, who are Wackenhut's neutral customers and prospective customers, to subcontract only with Local 1 signatory security services companies. Article 23 of the Security Services Agreement between Local 1 and BOMA/Chicago contains the "hot cargo" clause and reads in relevant part:

> With respect to any subcontractor that does not have a collective bargaining agreement with the Union, the Employer shall require that said contractor will meet all of the standards of this Agreement.

64. On October 4, 2006, Wackenhut filed an unfair labor practice charge with Region 13 of the NLRB that alleged that Defendant Local 1 and BOMA/Chicago violated Sections 8(e) and 8(b)(4) of the NLRA, as amended, 29 U.S.C. §§ 158(e), 158(b)(4), by agreeing to Article 23 of their Agreement.

65. Section 8(e) renders unlawful any agreement that requires an employer to use only subcontractors that sign union contracts – a so-called "hot cargo" agreement.

66. On March 19, 2007, the General Counsel of the NLRB directed that a Complaint issue against Local 1 and BOMA/Chicago for violation of Section 8(e) based on Article 23 of their Agreement.

67. The case was heard before an NLRB Administrative Law Judge on June 11 and 12, 2007. A decision and Recommended Order issued on December 21, 2007, finding BOMA/Chicago had violated Section 8(e) of the NLRA, as amended.

68. With no exceptions taken to the December 21, 2007 ALJ Decision, the NLRB adopted the ALJ's findings and conclusions of a violation of 8(e) and its Recommended Order on February 5, 2008.

69. The effect of Article 23 and the conduct described herein has been to exclude from Downtown Chicago office buildings any security services provider that did not have a collective bargaining agreement with Local 1, to eliminate competition among security services providers and to cause building owners and managers to pay more for security guard services than they would have paid but for the "hot cargo" agreement.

70. The conduct and activity of Defendant herein violated Sections 8(e) and 8(b)(4) of the NLRA, as amended, 29 U.S.C. §§ 158(e), 158(b)(4). As a direct and proximate result of the illegal conduct of the Defendant, as described above, Plaintiff Wackenhut has been injured in its business and property and has suffered actual damages for lost profits, increased overhead, direct expenses, legal costs and lost business opportunities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment as follows:

A.  That the Court grant Plaintiff treble damages in the sum found to have been sustained by the Company as a result of and in consequence of Defendant's antitrust violations. On information and belief, Plaintiff has incurred damages in excess of $5 million.

B.  That the Court grant Plaintiff damages in the sum found to have been sustained by the Company as a result of and in consequence of Defendant's unfair labor practices, pursuant to 29 U.S.C. § 187.

C.  That the Court grant Plaintiff its reasonable attorneys' fees and costs incurred in the prosecution of this matter.

D.  That the Court grant Plaintiff such other and further relief as in the exercise of its discretion it deems just and proper.

Respectfully submitted,
BAKER & McKENZIE LLP

By: ___/s/ Patrick J. Ahern_____

Patrick J. Ahern (ARDC# 6187380)
patrick.j.ahern@bakernet.com
John N. Raudabaugh (*pro hac vice* pending)
john.n.raudabaugh@bakernet.com
Karen Sewell (ARDC# 6284417)
karen.sewell@bakernet.com
BAKER & MCKENZIE LLP
130 E. Randolph Dr., Suite 3500
Chicago, Illinois 60601
312.861.8000

CHIDMS1/2609503.9