UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE WACKENHUT CORPORATION | ) | |
| | ) | |
| Plaintiff | ) | Case No.  08-C-2053 |
| | ) | |
| v. | ) | Judge Kendall |
| | ) | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1, *et. al.* | ) ) | Magistrate Judge Schenkier |
| | ) | |
| Defendants | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY SEIU LOCAL 1, THOMAS BALANOFF, MONA BALLENGER, AND EDWARD BOWEN**

**I.     CLAIMS 1-3 OF THE AMENDED COMPLAINT MUST BE DISMISSED UNDER THE LABOR EXEMPTION TO THE ANTITRUST LAWS.**

We showed in our opening memorandum that under *Brown v. Pro Football, Inc.*, 518 U.S. 231 (1996) and the Seventh Circuit's decisions in *United Rentals Highway Technologies v. Indiana Constructors*, 518 F.3d 526, 531 (7th Cir. 2008), and *Mid-America Regional Bargaining Ass'n  v. Will County Carpenters District Council*, 675 F.2d 881, 890 (7th Cir. 1982), the BOMA/Local 1 subcontracting clause at issue here[1] is protected against Wackenhut's antitrust attack by both the non-statutory labor exemption to the antitrust laws and the statutory labor exemption.

That is so because those labor exemptions protect subcontracting clauses, like the BOMA/Local 1 clause, (i) that are an integral part of a comprehensive collective bargaining agreement setting the wages, hours, and other conditions of employment of an employer's union-represented employees; and (ii) that serve to preserve for those employees the work they are doing or had been doing for that employer by forbidding the employer from contracting out that work to a subcontractor that does not meet the standards for wages, hours and other working conditions that

---

[1]     That clause is Article XXIII of the BOMA/Chicago – SEIU, Local 1 2004 Security Agreement.  "BOMA" is the Building Owners and Managers Association of Chicago and Local 1 is the Service Employees International Union, Local 1, SEIU.

are set in the employer/union collective bargaining agreement with regard to the subcontractor's employees who would do that work, while permitting the employer to contract out that work to a subcontractor who meets those standards and who, on some basis other than providing its employees substandard labor conditions, can do the work more efficiently than the employer.

In response, Wackenhut argues that the Supreme Court labor antitrust precedent holds both (a) that neither the non-statutory exemption nor the statutory exemption protects a subcontracting clause like the BOMA/Local 1 clause, and (b) that a determination that a subcontracting clause violates section 8(e) of the National Labor Relations Act works to sweep away the protections of the labor antitrust exemptions. That argument fails from beginning to end because the Supreme Court precedents that Wackenhut cites do not so hold.

### A. The *Connell* Decision Does Not Hold that a Subcontracting Clause in a Collective Bargaining Agreement is Outside the Non-statutory Exemption.

Wackenhut's main assertion is that the Supreme Court's decision in *Connell Constr. Co. v. Plumbers & Steamfitters Local No. 100*, 421 U.S. 616 (1975), is "controlling" and "dispositive of Defendants' argument that the non-statutory (and statutory) exemption applies to immunize the subcontracting restriction contained in Article 23" of the BOMA agreement. Plf. Mem. at 3.

The *Connell* decision belies that assertion in terms. What *Connell* "hold[s]" is "that this [Connell/Plumbers Local 100 subcontracting] agreement, *which is outside the context of a collective-bargaining relationship* and not restricted to a particular jobsite, but which nonetheless obligates Connell to subcontract work only to firms that have a contract with Local 100, may be the basis of a federal antitrust suit…." *Id.* at 635 (emphasis added). The Court also made this limit on its holding explicit in adding that:

> There can be no argument in this case, whatever its force in other contexts, that a restraint of this magnitude *might be entitled to an antitrust exemption if it were included in a lawful collective-bargaining agreement…. In this case, Local 100 had no interest in representing Connell's employees.* The federal policy favoring collective bargaining therefore can offer no shelter for the union's coercive action against Connell or its campaign to exclude nonunion firms from the subcontracting market.

*Id.* at 625-26 (citations omitted; emphasis added).

Contrary to Wackenhut's argument, then, *Connell*'s holding does *not* govern in an antitrust suit that attacks a subcontracting clause that *is* "[in] the context of a collective-bargaining relationship." *Id.* at 635. Simply stated, the reason that there is a "critical" legal difference

2

between *Connell* and its holding and cases like the instant case, *see United Rentals,* 518 F.3d at 531, is that the whole point of the non-statutory labor exemption is to protect agreements reached through the collective bargaining process from attack under the antitrust laws.

The non-statutory labor exemption "recognizes that, to give effect to federal labor laws and policies and *to allow meaningful collective bargaining* to take place, some restraints on competition imposed *through the bargaining process* must be shielded from antitrust sanctions." *Brown*, 518 U.S. at 237 (emphasis added) (citing *Connell*, 421 U.S. at 622). And, broadly stated, that shield applies to a collective bargaining agreement that is addressed to standardizing wages, hours, and working conditions in a labor market and to a provision, like the BOMA/Local 1 subcontracting clause, that both directly furthers that labor market aim, and by so doing, has an indirect effect on competition in a product or business market. *Mid-America*, 675 F.2d at 892.

Both in its theory and in its substance, while the non-statutory labor exemption is plainly inapplicable to cases like *Connell,* where there is no collective bargaining relationship, that exemption just as plainly applies in full force to cases like the instant one, where the subcontracting clause in question is integral to the BOMA/Local 1 collective bargaining agreement that standardizes the wages, hours, and working conditions of security employees doing work for BOMA members.

Wackenhut tries to escape this critical difference between *Connell* and this case by mischaracterizing our argument. Wackenhut says that we contend that *Connell* does not control here on the trivial ground that in this case the subcontracting clause is in the same document as the collective bargaining agreement, while "the subcontracting clause in *Connell* was in a separate document than the collective bargaining agreement." *See* Plf. Mem. at 4, n.1. That is not our point at all. As the excerpts from the Supreme Court opinion in *Connell* quoted above demonstrate, the Connell/Plumbers Local 100 subcontracting agreement was totally outside the context of any collective bargaining relationship. In *Connell* the union had never represented Connell's employees, had no interest in representing Connell's employees, and had no collective bargaining agreement with Connell setting the wages, hours, and working conditions of employees employed by Connell. *See* 421 U.S. at 619-20.[2] That is why *Connell* is critically different from this case.

---

[2] The only collective bargaining agreement noted in the *Connell* decision was an agreement between Plumbers Local 100 and a multiemployer bargaining association of employers whose employees Local 100 *did* represent. But, as the decision makes clear, Connell was not a member

3

> B.  **The Supreme Court Precedents Provide No Support For Wackenhut's Section 8(e) Violation Theory.**

Wackenhut also contends that "[t]he Supreme Court has held in at least two decisions that a finding that a contractual provision violates Section 8(e) also means that the non-statutory exemption does not apply to the provision." Plf. Mem. at 6. For that contention, Wackenhut cites *Connell* and *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72 (1982). Neither *Connell* nor *Kaiser* so holds.

The *Connell* Court, in Part II of its opinion, held first – and without any regard to what section 8(e) of the NLRA provides – that where there is no collective bargaining relationship the non-statutory labor exemption to the antitrust laws does not protect an employer/union agreement providing that the employer would only contract work to subcontractors that had signed collective bargaining agreements with the union. 421 U.S. at 621-26. Only then did the Court address, in Part III of the opinion, Local 100's *defense* that "the kind of agreement it obtained from Connell is explicitly allowed by the construction-industry proviso to § 8(e) and that antitrust policy therefore must defer to the NLRA." *Id.* at 626. The Court rejected the union's "8(e) construction industry proviso" defense, again on the ground that the Connell/Local 100 subcontracting agreement was outside the context of a collective bargaining relationship. *Id.* at 626-34. In short, the Court addressed the non-statutory exemption before considering the 8(e) construction industry proviso defense and the Court then rejected that defense on the ground that the contract provision at issue in *Connell* was outside the context of a collective bargaining relationship. The *Connell* opinion thus provides no support for Wackenhut's assertion that *Connell* holds that if "a contractual provision violates Section 8(e)[,] … the non-statutory exemption does not apply to the provision." Plf. Mem. at 6.

Nor does *Kaiser Steel Corp. v. Mullins* support Wackenhut's assertion. In *Kaiser* the section 8(e) issue was also raised in defense to an action – but not an antitrust action. In that case, a multiemployer benefit fund brought a suit against Kaiser for contributions owed under a contract. Kaiser defended by arguing that the contract clause that called for the contributions was unlawful under sections 1 and 2 of the Sherman Act and section 8(e) of the NLRA. The district court and

---

of that multi-employer association and was not a party to that multiemployer collective bargaining agreement. That agreement, therefore, did not provide any predicate for the completely separate subcontracting agreement that Local 100 had obtained from Connell. 421 U.S. at 619, 623.

4

court of appeals held that Kaiser could not raise those defenses in such a collection action. 455 U.S. at 76. The Supreme Court reversed, holding that Kaiser could defend on the asserted grounds of illegality, and that when section 8(e) is asserted as a defense in a contract action federal courts have jurisdiction to determine that defense even though the NLRB (which has primary jurisdiction over unfair labor practices) has not first addressed the issue. *Id*. at 77-86. The Court did not discuss the merits of either the antitrust defense or the 8(e) defense, but remanded for the lower courts to decide both defenses on the merits. *Id*. at 76, 89. Thus, *Kaiser* did not in any way raise a question whether a determination that a contract clause violates section 8(e) makes the non-statutory labor exemption inapplicable, and the *Kaiser* Court's decision plainly does not decide – or even discuss – that question.

   Of equal moment, Wackenhut's effort to press *Kaiser* to its purpose rests on a distortion of what the *Kaiser* Court said in passing about its earlier decision in *Connell.* Wackenhut says: "in *Kaiser*, the Court stated that the reason that the Court in *Connell first* looked to the issue of whether the subcontracting provision violated Section 8(e) was that it needed to do so in order to *first* determine whether the provision was immune from the application of the antitrust laws." Plf. Mem. at 7 (emphasis added). Wackenhut continues, "Applying the Court's reasoning in *Kaiser,* it follows that, if the provision violates Section 8(e), it is not immune from the application of the antitrust laws – in other words, the non-statutory exemption does not apply to the provision." *Id*.

   The problem with that argument is that Wackenhut's version of what the *Kaiser* Court said about *Connell* is made of whole cloth. What the *Kaiser* Court actually said was: "In *Connell,* we decided the § 8(e) issue *in the first instance*. It was necessary to do so to determine whether the agreement was immune from the antitrust laws." 455 U.S. at 85 (emphasis added). In context, these sentences address the issue of primary jurisdiction. What the *Kaiser* Court plainly meant in the first sentence was only that, notwithstanding the ordinary requirements of primary jurisdiction, the *Connell* Court had decided the section 8(e) defense in the first instance even though that issue had not been presented to the NLRB. And, the *Kaiser* Court's second sentence was not saying, as Wackenhut would have it, that "the issue of whether the subcontracting provision violated Section 8(e)" had to be decided before the Court could "determine whether the provision was immune from the application of the antitrust laws." Instead, the *Kaiser* Court was reflecting upon the way the section 8(e) issue arose in *Connell* – namely, that even after the *Connell* Court had determined as a general matter that the non-statutory labor exemption did not apply (due to the absence of a

5

collective bargaining relationship), the Court had to, and did in fact, address Local 100's argument that if the subcontracting clause was permitted by the construction industry proviso to section 8(e) the clause would be entitled to a special exemption from the antitrust laws.[3]

There is simply nothing in either *Connell* or *Kaiser* that supports Wackenhut's assertion that a finding that a subcontracting clause violates section 8(e) works to sweep away the protections of the non-statutory labor exemption to the antitrust laws.

### C. The Lower Federal Court Cases Likewise Provide No Support For Wackenhut's Section 8(e) Violation Theory.

As a secondary prop for its section 8(e) violation theory, Wackenhut argues that lower federal courts have established an automatic non-statutory labor exemption to the antitrust laws for subcontracting agreements that are *permitted* by section 8(e) and that the converse – that a subcontracting agreement that violates section 8(e) automatically loses the non-statutory exemption – must necessarily follow. Both the premise and the conclusion of Wackenhut's argument are false.

To support its premise, Wackenhut cites the Ninth Circuit decision in *Associated. Builders & Contractors, Inc. v. City of Seward*, 966 F.2d 492, 498-99 (9th Cir. 1992), which Wackenhut describes as holding that a subcontracting clause that does not violate section 8(e) because it is authorized by the construction-industry proviso to 8(e) is not subject to an antitrust suit, because Congress would not have authorized such clauses under the labor laws only to have the clauses subject to being invalidated by the antitrust laws. *See* Plf. Mem. at 7. At a later point in its brief, Wackenhut describes *United Rentals*, 518 F.3d at 531, as standing for the same proposition. *Id.* at 11.

To the contrary, both the Ninth Circuit and the Seventh Circuit have squarely rejected the proposition that Wackenhut ascribes to them. In *Sun-Land Nurseries v. Southern Calif. District Council of Laborers*, 793 F.2d 1110, 1115 (9th Cir. 1986), *cert. denied*, 479 U.S. 1090 (1987), the

---

[3] *See also Zimmerman v. National Football League*, 632 F. Supp. 398, 404 (D.D.C. 1986) (rejecting an argument that *Connell* first determined that the agreement in question violated the labor laws and then stated that the non-statutory labor exemption was inapplicable to such an agreement). In *Zimmerman*, the District Court noted also that, "after undertaking an extensive analysis of the effect of the agreement," the Supreme Court in *Connell* "simply noted that since there was no collective bargaining agreement between the union and Connell Construction Co., the policy favoring collective bargaining 'offer[ed] no shelter for the union's coercive action.'" *Id.* (quoting *Connell*, 421 U.S. at 626).

6

*en banc* Ninth Circuit held: "We cannot accept the Laborers' contention that, once an agreement is found to be within the construction industry proviso to section 8(e), it is entirely and invariably beyond the reach of the antitrust laws." *See also id.* at 1117.  The later opinion in *Assoc. Builders & Contractors* cited by Wackenhut relied on the *Sun-Land* decision, and did not purport to reach a different conclusion.  *See* 996 F.2d at 498.  And, in *United Rentals,* 518 F.3d at 531, the Seventh Circuit held: "It might seem that since the hot cargo clause in the collective bargaining agreement is lawful under the National Labor Relations Act, it cannot violate the Sherman Act.  But that is not correct, or at least not quite correct…."

Moreover, even if Wackenhut's premise were true, and every subcontracting clause that is permitted by the construction industry proviso to section 8(e) is necessarily entitled to the non-statutory exemption, it does not follow that every subcontracting clause in other industries that on some ground violates section 8(e) automatically loses the non-statutory exemption.  Just as there can be subcontracting clauses lawful under section 8(e) that affect a business market to an extent that raises antitrust concerns, *see United Rentals,* 518 F.3d at 532, there can be subcontracting clauses that violate section 8(e) on some ground but raise no such concerns.[4]  And, as noted in our opening memorandum, in *Feather v. United Mine Workers of America*, 711 F.2d 530 (3d Cir. 1983), the Third Circuit both affirmed the trial court's finding that a subcontracting clause violated section 8(e) of the NLRA, and also affirmed the same court's finding that the union was exempt from antitrust liability under the non-statutory exemption.[5]

---

[4]   In this instance, the NLRB's finding of a section 8(e) violation turned on a distinction between a *proper* 8(e) subcontracting clause -- which limits contracting out to subcontractors that provide their employees wages, hours, and working conditions *equivalent* to those in the Local 1/BOMA collective bargaining agreement -- and an improper 8(e) clause -- which limits contracting out to subcontractors who provide their employees the *exact* wages, hours, and working conditions in the collective bargaining agreement including the payments to fringe benefit funds required by the Local 1/BOMA agreement.  That section 8(e) distinction has nothing to do with whether a subcontracting clause is protected by, or entitled to, the labor antitrust exemptions. For purposes of antitrust laws and the application of the labor antitrust exemptions, the two clauses are identical.  Both are focused on the labor market; and both have only the indirect effect on the business market of preventing subcontractors from competing for contracts by undercutting the union's standard wages, hours, and working conditions for employees performing the subcontracted work.

[5]   Wackenhut notes that the Third Circuit draws a distinction between the application of the non-statutory labor exemption in actions for declaratory or injunctive relief, and in actions for damages, such as *Feather*, and correctly acknowledges that in actions for damages, a

**D.    Wackenhut's Other Arguments for Rejecting the Non-statutory Exemption Are Equally Unfounded.**

Wackenhut offers several additional arguments to avoid application of the non-statutory exemption. All of these arguments are unfounded.

*First,* in two strikingly erroneous passages, Wackenhut contends that the Seventh Circuit's opinion in *United Rentals* "did not even address" the applicability of the non-statutory labor exemption. *See* Plf. Mem. at 1, 11. While the Court in that case did not use the phrase "non-statutory exemption," even a cursory reading of the opinion reveals that the court spent nearly two-and-one-half pages discussing that exemption before finding that the exemption applied. *United Rentals*, at 531-33. In that discussion, the Court applied precedents that are unmistakably rooted in the non-statutory labor exemption, including *Brown v. Pro Football*, *supra* (finding the non-statutory exemption applicable), and *Clarett v. National Football League*, 369 F.3d 124, 130-31 (2d Cir. 2004) (same).

*Second,* Wackenhut repeatedly asserts that the subcontracting clause in the BOMA/Local 1 collective bargaining agreement was not even a valid "contracting out" clause dealing with "work that employees would do under a collective bargaining agreement" but was an entirely invalid clause "against hiring a subcontractor," Plf. Mem. at 2, 12-13; and that the ALJ's finding that the work covered by the subcontracting clause was "fairly claimable" by Local 1 therefore means only that BOMA and Local 1 could negotiate a lawful subcontracting clause for future agreements, *id.* at 13. What Wackenhut ignores is that the "fairly claimable" finding also means that the BOMA/Local 1 subcontracting clause at issue here addressed "work that employees [of BOMA members] would do under a collective bargaining agreement," and that the subcontracting clause was therefore a valid work preservation clause on its face addressed to eliminating competition among subcontractors based on undercutting Local 1's standard wages, hours, and working

---

subcontracting clause that violates section 8(e) can nonetheless be entitled to the non-statutory exemption. Plf. Mem. at 11. (Wackenhut's action is solely an action for damages. Wackenhut has no claim for injunctive or declaratory relief here because the alleged exclusionary behavior ended on or about April 29, 2007, *see* Am. Compl. ¶¶ 3, 24, 71.) Wackenhut tries to distinguish this Third Circuit ruling by asserting that Defendants in this case could not qualify for the exemption under the way the Third Circuit would apply the exemption in damages actions, saying Defendants cannot show "that it was not foreseeable that the clause would violate section 8(e) and 8(b)(4)." *Id.* at 11-12. But, even if pertinent, this argument ignores the fact that the NLRB General Counsel, in prosecuting the unfair labor practice complaint, conceded that the BOMA/Local 1 clause was not unlawful on its face. ALJ Op. at 12 n.13, 22.

conditions. That the particular clause was implemented in a way that violated section 8(e) had no additional anticompetitive impact on the "business market" of providing security services. *See* Def. Mem. at 9. The subcontracting clause left security contractors free to compete for BOMA contracts on any basis other than providing lesser wages, hours, and working conditions to their security employees than those called for by the BOMA agreement.

*Third,* Wackenhut asserts that the non-statutory exemption should not apply because the "subcontracting restriction in Article 23 [of the BOMA agreement] is not limited to wages, hours and working conditions." *See* Plf. Mem. at 8. This assertion is simply incorrect as a matter of law. The only respect in which Wackenhut says the collective bargaining agreement went "beyond wages and working conditions" was that it "forced subcontractors to abide by its grievance procedure and pay into the union's fringe benefit funds." Plf. Mem. at 9. But under settled federal labor law, grievance procedures and payments to fringe benefit funds are two of the matters relating to employee wages, hours, and working conditions that constitute the mandatory subjects of collective bargaining. *See Chicago Magnesium Castings Co. v. NLRB.*, 612 F.2d 1028, 1034 (7th Cir. 1980) ("It is moreover settled that grievance machinery is a mandatory subject of collective bargaining"); *Capitol-Husting Co., Inc. v. NLRB.*, 671 F.2d 237, 246 (7th Cir. 1982) ("Changes in health benefit programs and pension fund contributions constitute mandatory subjects of collective bargaining").[6]

*Finally,* Wackenhut asserts that the subcontracting clause "worked … to fill Local 1's coffers with pension and other fund contributions from signatories and non-signatories alike…." Plf. Mem. at 11. This assertion is also incorrect as a matter of law. Under the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), all such benefit contributions must be paid to a trust fund "for the sole and exclusive benefit of the employees of such employer, and their families and dependents," can be used only to provide certain types of benefits, which are listed in § 186(c)(6) – (9), and employees and employers must be "equally represented in the administration of such fund," *id.* § 186(c)(5)(B).

### E. Under *Connell*, as interpreted by the Seventh Circuit's decisions in *Mid-America* and *United Rentals*, Defendants' actions are squarely within the non-statutory labor exemption to the Sherman Act.

---

[6] The only other provision of the BOMA collective bargaining agreement that Wackenhut suggests was not a mandatory subject of bargaining was the subcontracting clause itself. Plf. Mem. at 15. This suggestion is discussed *infra* at 12-13.

9

In sum, Wackenhut's response to our showing that the labor antitrust exemptions apply in this case rests on a misreading of the authorities Wackenhut cites. Once those misstatements of the law are exposed, it is clear that Defendants' subcontracting clause is entitled to the non-statutory labor exemption. By providing that any BOMA subcontractor must adhere to the standards for wages, hours, and working conditions that are outlined in the BOMA/Local 1 collective bargaining agreement, the agreement functions to eliminate competition over wages, hours, and working conditions in the labor market for security employees working in downtown Chicago buildings owned or managed by BOMA members. Eliminating competition in such a labor market through a collective bargaining agreement is the core of a union's activity and thus is exempted from antitrust liability. *See Connell*, 421 U.S. at 622; *Mid-America*, 675 F.2d at 892-93.

Moreover, the subcontracting clause serves to preserve work that the security employees whom Local 1 represents are currently doing for BOMA members and to recapture the work that the security employees Local 1 represents have traditionally done for BOMA members. *National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612 (1967); ALJ Op. at 28-30 (finding work "fairly claimable" by the union). A subcontracting clause in a collective bargaining agreement that accomplishes these goals in the labor market is firmly protected by the non-statutory exemption to the Sherman Act, even where the clause "looks like an exclusionary practice." *United Rentals*, 518 F.3d at 531-33; *see also Mid-America*, 675 F.2d at 892; Def. Mem. at 7-8.

F.  **Under the Seventh Circuit's Ruling in *Mid-America*, Defendants' Actions Also Are Protected Under the Statutory Exemption to the Antitrust Laws.**

While the statutory labor exemption to the antitrust laws most commonly applies to unilateral union activity, *see, e.g., Clarett*, 369 F.3d at 130 n.11, the undeniable law of this Circuit holds that the statutory labor exemption to the antitrust laws also applies to a collective bargaining agreement between a union and a group of employers. *Mid-America*, 675 F.2d at 886; *Imperial Constr. Mgmt. Corp. v. Laborers Int'l Union of N. Am. Local 96*, 729 F. Supp. 1199, 1211 (N.D. Ill. 1990). In arguing that the statutory exemption is inapplicable, *see* Plf. Mem. at 13-16, Wackenhut (1) urges this Court to ignore the Seventh Circuit's clear precedent; and (2) distorts the cases it cites in support of its argument.

Under *Mid-America*, a collective bargaining agreement is within the statutory exemption if the "union acted in its own self interest," unless the plaintiff properly pleads a conspiracy between

10

the union and a non-labor entity. 975 F.2d at 886; *Colfax Corp. v. Illinois State Toll Highway Authority*, No. 93 C 7463, 1994 WL 444882, at *9 (N.D. Ill., Aug. 16 1994); *Imperial Constr.*, 729 F. Supp. at 1211. Specifically, "the [statutory] labor exemption has been applied when the union acts to protect the wages, hours of employment, or other working conditions of its member-employees, objectives that are at the heart of national labor policy." *Id.* As we set out in our opening memorandum, there is simply no question that Defendants' actions were in the self-interest of the union. *See* Def. Mem. 9-10; *see also Imperial Constr.*, 729 F. Supp. at 1211 (noting also that activities are found to be in a union's self-interest if "they bear a reasonable relationship to a legitimate union interest"). Similarly, there is no question that Wackenhut has failed to plead a conspiracy under the standards outlined in *Mid-America* and *Imperial Construction*. Def. Mem. 10-11.

Wackenhut does not dispute either of these points or offer any other rebuttal to our showing that Local 1's actions fit within the statutory labor exemption as articulated in *Mid-America*. Rather, Wackenhut twists the binding precedents out of recognizable shape and, in so doing, makes a number of critical legal errors.

*First*, Wackenhut claims that *Connell* controls here, rather than *Mid-America*, on the ground that the agreement in *Mid-America* "was directed at wages and … the labor market," while the agreement in *Connell* was directed at the "business market." Plf. Mem. at 14. But there can be no question that the BOMA/Local 1 subcontracting clause was directed at the labor market (*i.e.*, competition based on wages, hours, and working conditions), and that its secondary effect on the business or product market was incidental to its primary effect on the labor market. The BOMA/Local 1 collective bargaining agreement and its subcontracting clause only addressed the wages, hours, and working conditions that are mandatory subjects of bargaining under federal labor law. *See supra* at 9. While Wackenhut implies – but does not directly assert – that the BOMA/Local 1 agreement "reached … topics such as prices," (*i.e.*, the amount that Wackenhut charges its customers to provide security services), the fact of the matter is that the BOMA/Local 1 agreement does not address "prices" in any way. Indeed, any impact that agreement would have on price competition would be an indirect result of standardizing wages, hours, and working conditions for security employees – an incidental impact that is squarely protected by both labor

exemptions to the antitrust laws. *See Connell*, 421 U.S. at 622; *Mid-America,* 675 F.2d at 886, 889.[7]

*Second*, Wackenhut asserts that, in any event, and notwithstanding *Mid-America*, the statutory exemption issue is governed by *Connell*, which gave "short shrift" to the applicability of that exemption. *See Connell*, 421 U.S. at 621. But the Seventh Circuit in *Mid-America* concluded that *Connell* does not govern on the applicability of the statutory exemption in a collective bargaining context, and *Mid-America* is the governing precedent here.[8]

*Third,* Wackenhut's suggestion that a subcontracting clause that violates section 8(e) "cannot, by definition pertain to subjects which are mandatory subjects of bargaining," is simply incorrect as a definitional matter. Subcontracting – or "contracting out" – clauses are mandatory subjects of bargaining under federal labor law. *See Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 211 (1964) ("To hold … that contracting out is a mandatory subject of collective bargaining would promote the fundamental purpose of the Act by bringing a problem of vital concern to labor and management within the framework established by Congress as most conducive to industrial peace."). And, as we have shown, while the NLRB found that the BOMA/Local 1 subcontracting clause violates section 8(e), that clause both on its face and as applied "pertain[s] to subjects which are mandatory subjects of bargaining," -- and *only* such subjects -- and does so by setting a single labor standards condition on contracting out – that the subcontractor meet the wages, hours, and working conditions provided for in the BOMA/Local 1 collective bargaining agreement for security employees doing work for BOMA members.

---

[7] Moreover, an agreement that *standardizes* wages, hours, and working conditions of security employees will not give any security services provider a competitive advantage over any other provider. *But see* Plf. Mem. at 5. If anything, standardization in the labor market serves only to level the playing field on which security services providers compete.

[8] Nor does *Imperial Construction*, 729 F. Supp. 1199, support Wackenhut's distinction of *Connell* and *Mid-America*. *See* Plf. Mem. at 15. Wackenhut cites *Imperial Construction* for its interpretation of *Connell* that "*Connell* implicitly assumed that *such an allegation* was sufficient to escape the statutory exemption." *Id.* at 15 (citing *Imperial Constr.*, 729 F. Supp. at 1210) (emphasis added). But the "allegation" referred to in *Imperial Construction*, and, by reference, in *Connell*, was the allegation that the union had entered into a subcontracting agreement outside of the context of a collective bargaining relationship. The ultimate holding in *Imperial Construction* – and the reason for denying defendants' motion for dismissal or summary judgment – was that the court could not conclude as a matter of law that the agreement challenged there was in a collective bargaining context. 729 F. Supp. at 1216. *See also id.* at 1213 n.11.

12

*Finally*, Wackenhut suggests that requiring allegations of "conspiracy" to make the statutory exemption inapplicable in a collective bargaining context – which *Mid-America* does – "would be contrary to the holding in *Connell* and Section 2 of the Sherman Act." Plf. Mem. at 16. Once again Wackenhut's quarrel is with the Seventh Circuit, for that is the clear holding of *Mid-America*, and thus is the law of this Circuit.[9]

## II. CLAIM 4 MUST BE DISMISSED FOR ITS FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR A LACK OF SUBJECT MATTER JURISDICTION.

### A. Section 303 of the LRMA Does Not Give Federal Courts Jurisdiction to Entertain an Action for Damages for Section 8(e) Violations.

In Claim 4 of the Amended Complaint, Wackenhut seeks a damages remedy against Local 1 under section 303 of the LMRA for the violation of section 8(e) of the NLRA that the NLRB found. We explained in our opening memorandum that this claim fails because section "303 provides a remedy only for violations of § 8(b)(4) of the Act," *Shepard v. NLRB*, 459 U.S. 344, 351 (1983), and it is not a section 8(b)(4) violation for a union to be a party to an agreement that violates section 8(e). The only section 8(b)(4) violation relating to section 8(e) requires "engag[ing] in a strike" or "threaten[ing], coerc[ing], or restrain[ing]" a person for the purpose of "forcing or requiring" someone to "enter into" an agreement that violates section 8(e) or to cease doing business with another person. Def. Mem. at 12-13.

Wackenhut's response is that *Connell*, *supra*, as well as *Kaiser*, *supra*, supports its contention that "[t]his Court may determine the merits of Count IV." Plf. Mem. at 17. That response is wrong on both counts. *Connell* does not expand section 303 to permit federal courts to entertain damages actions against unions for being party to an agreement that violates section 8(e). In *Connell*, as we noted earlier, the section 8(e) issue that the Supreme Court decided was raised by a defendant as the basis for a defense to an antitrust claim and not by a plaintiff as a basis for a remedy under section 303. The Court grounded its jurisdiction to decide that section 8(e) issue on the proposition that "the federal courts may decide labor law questions that emerge as collateral

---

[9] Even if *Mid-America* were not controlling, *Connell* had no occasion to decide what must be alleged or proved to establish that a provision in a collective bargaining agreement is not protected by the statutory labor exemption. Moreover, requiring allegations of a conspiracy in order to take such an agreement outside the statutory exemption is simply not akin to requiring a conspiracy to plead an affirmative cause of action under section 2 of the Sherman Act. *But see* Plf. Mem. at 16.

13

issues in *suits brought under independent federal remedies*, including the antitrust laws." *Id.* at 626 (emphasis added). Indeed, the Court expressly noted that section 303 does not "provide a remedy for violations of § 8(e)." 421 U.S. at 634 n.16. The *Kaiser* Court, in its turn, described its jurisdiction over the section 8(e) issue in that case in the same terms, adding a clear statement that "only the [National Labor Relations] Board may provide *affirmative remedies* for unfair labor practices…." 455 U.S. at 86 (emphasis added).[10]

> B.   The Amended Complaint Fails to State a Claim for a Violation of Section 8(b)(4) of the NLRA.

As we explained in our opening memorandum, *see* Def. Mem. at 13-14, Wackenhut has utterly failed to allege the facts that are required to support a section 303 damages claim for a violation of section 8(b)(4): namely, that Local 1 engaged in a strike or other actual or threatened *coercive* conduct that was designed to *force* BOMA and its members to enter into article 23 or to cease doing business with another person. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 579 (1988).[11]

Neither of Wackenhut's responses has any substance. First, Wackenhut cites five conclusory references to section 8(b)(4) in the Complaint. *See* Plf. Mem. at 18-19 (bullets 1, 2, 5, 7, 8) (citing Am. Compl. ¶¶ 6, 7, 34, 78, and 18.) These bare statutory citations, without any allegations of the essential facts, are insufficient to state a claim. *Dargo v. Clear Channel Commc'ns*, No. 07-C-5026, 2008 WL 2225812, at *2 (N.D. Ill. May 28, 2008) ("[I]n order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if

---

[10]   *Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 684-688 (1965), cited Plf. Mem. at 17, is even further afield. In that case, the Court held that in an antitrust action it could determine whether a provision of a collective bargaining agreement addressed a mandatory subject of bargaining, in order to decide whether the labor antitrust exemption applied, and not as the basis for a separate claim. *Jewel Tea*, 381 U.S. at 685.

[11]   Wackenhut asserts that *DeBartolo* is irrelevant because it does not address the federal court's subject matter jurisdiction over sections 8(b)(4) or 8(e), or Section 303 claims. *See* Plf. Mem. at 20 n.4  This statement is simply erroneous. *DeBartolo* contains an extensive discussion of the scope and meaning of section 8(b)(4). *See* 485 U.S. at 578-86. Because federal subject matter jurisdiction under section 303 can only exist where a claim under section 8(b)(4) has been properly alleged, *see* 29 U.S.C. § 187, the scope of section 8(b)(4) directly determines the scope of federal subject matter jurisdiction under section 303 of the LMRA.

taken as true, at least plausibly suggest that the plaintiff is entitled to relief") (citing *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

Second, Wackenhut points to two allegations that Local 1 "***used the 'hot cargo' agreement to force*** BOMA/Chicago members to refuse to do business with Wackenhut or, if they ever allowed Wackenhut to bid on a security services contract, to force Wackenhut to charge the same rates – those contained in Local 1's agreement with BOMA/Chicago – as all other security services providers in Chicago"; and that "[t]hrough the 'hot cargo' agreement, ***Local 1 forced*** building owners and managers … to subcontract only with Local 1 signatory security services companies." *See* Plf. Mem. at 18-19 (bullets 4, 6) (citing Am. Compl. ¶¶ 26, 71)(emphasis in original).

Although the word "force" appears in the phrases that Wackenhut strategically highlighted, these allegations are simply an exaggerated way of saying that the subcontracting agreement by its terms forbade BOMA members to subcontract to subcontractors that were not providing security employees the same wages, hours, and working conditions that BOMA members who followed the dictates of that agreement would provide. Wackenhut's artful phrasing cannot obscure the fact that the Amended Complaint does not come close to alleging that Local 1 "engage[d] in a strike" or "threaten[ed], coerce[d], or restrain[ed]" a person for the purpose of "forcing or requiring" anyone to "enter into" article 23 or to cease doing business with another person.[12]

## CONCLUSION

For the foregoing reasons, and for the reasons discussed in our opening memorandum, Defendants SEIU Local 1, Thomas Balanoff, Mona Ballenger, and Edward Bowen respectfully request that the Court grant their motion to dismiss Wackenhut's complaint in its entirety under Rules 12(b)(1) and 12(b)(6).


Respectfully Submitted,

---

[12] Wackenhut's argument that "section 8(b)(4)(B) makes it unlawful to enforce a 'hot cargo' clause already obtained," is also incorrect. *See* Plf. Mem. at 17. To support that assertion, Wackenhut cites *Feather*, 711 F.2d at 536, a case in which the Plaintiffs alleged, and the trial court found, substantial evidence of a union's striking to force coal mine companies and coal haulers to sign the agreement at issue in that case plus picketing and other coercive conduct to require the coal companies to stop using the non-signatory haulers. *Id.* at 533, 537. Here, there simply have been no such allegations of coercion for that purpose.

15

        */s/ Alexia Kulwiec*
        ALEXIA M. KULWIEC
        LESLIE J. WARD
        STEVEN M. STEWART
        SEIU Local No. 1
        111 East Wacker Drive
        Suite 2500
        Chicago, IL 60601
        (312) 233-8712

        */s/ Julia Penny Clark*
        JULIA PENNY CLARK*
        DANIEL A. ZIBEL*
        Bredhoff & Kaiser PLLC
        805 Fifteenth Street N.W.
        Suite 1000
        Washington, DC 20005
        (202) 842-2600

        *Counsel for Defendants SEIU Local 1, Thomas Balanoff, Mona Ballenger, and Edward Bowen*

        * admitted *pro hac vice*

Dated:  August 18, 2008

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August, 2008, a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS SEIU LOCAL 1., THOMAS BALANOFF, MONA BALLENGER, AND EDWARD BOWEN was filed electronically with the Clerk of the Court was served via the CM/ECF system upon all counsel of record in this case. Pursuant to Local Rule 5.2(e), a courtesy copy of this memorandum will be delivered to the courtroom deputy's office in Room 2316-A of the Dirksen Building.

                    /s/ *Julia Penny Clark*
                    Julia Penny Clark